# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4943-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

T.D., T.B.B. and A.D.S.,

      Defendants,

and

E.B.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
T.B., K.D., J.D., E.B. and J.D.,

      Minors.

_____

Submitted April 2, 2020 – Decided May 27, 2020

Before Judges Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FG-08-0058-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Amy M. Williams, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Erica L. Sharp, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor J.D. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Joseph Hector Ruiz, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors E.B. and J.D. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Louise M. Cho, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant E.B. appeals a judgment—following a one-day trial—terminating his parental rights to three of his six children: J.D. (John) born in 2014, E.D. (Eric) born in 2016 and J.D. (Jane) born later in 2016. Their mother, T.D. (Theresa), surrendered her parental rights and is not a participant in this appeal. We affirm the trial court's order largely for the reasons expressed in its comprehensive, oral opinion.

2

The Division of Child Protection and Permanency (Division) provided services for Theresa in 2014 because of John's failure to thrive and a respiratory infection, and again in 2016, because Eric was born prematurely, and there were concerns about Theresa's ability to care for all five[1] of her children.

In September 2016, the Division removed John and Eric, and two of Theresa's other children, due to her loss of housing and financial assistance and filed a complaint for the children's care, custody and supervision (the FN complaint) shortly after this. Defendant did not live with Theresa and the children. Theresa advised defendant about the removal, but he was not served with the papers. He did not attend the court proceeding or return the Division's subsequent phone call. The court's order granted him supervised visitation with the children.

Jane was born in December 2016, weighing only two pounds. Defendant did not return multiple phone calls to him from the Division. After a search, he was served with the FN complaint in May 2017. He was then given an application for a public defender, but did not submit it until December 2017. In the interim, the Division moved Eric to a resource home, and moved John to a

---

[1] Theresa surrendered her rights to the other two children. Defendant is not the father of these children. The fathers of these children have not appealed.

A-4943-18T1

different home. Jane was added to the FN complaint and placed in Eric's resource home. The trial court ordered defendant to be evaluated for services.

Defendant contacted the Division for the first time on June 19, 2017. He knew the Division had placed the children, claimed where he was living was not suitable for them, and said he lacked income because he paid support for six children. Defendant did not know how he could care for three children on his own and had not acted sooner because he thought the Division would return them to Theresa after she completed services. He could not give the Division the names of relatives or friends as possible placements.

Dr. David Bromberg, Psy.D., conducted a cognitive assessment and parenting capacity evaluation of defendant. He concluded defendant was not suffering from significant symptoms of depression, anxiety or psychiatric issues, and did not make treatment recommendations. Defendant's cognitive testing also showed he was not in need of services. Defendant told Dr. Bromberg he never was the primary caretaker of his six children and was reluctant to take custody of his three children with Theresa—preferring that she provide for their care. It was Dr. Bromberg's opinion if defendant decided to take custody, he "appear[ed] to be capable to provide a safe and stable environment for them."

The Division's efforts to place the children with a maternal relative were not successful. In April 2018, the Division filed a guardianship complaint seeking to terminate parental rights.

Defendant did not attend his scheduled psychological and bonding evaluation with Dr. James Loving, Psy.D., in August 2018. It was not rescheduled because "he had been out of contact with the Division and it was not likely that he was going to attend." His attorney explained to the court in November 2018, that defendant's work schedule resulted in missed visits and he still did not have suitable housing.

Defendant exercised supervised visitation with the children from July 2017 to November 2018, and then once in February 2019. He last visited with them in March 2019.

At the guardianship trial in June 2019, Theresa completed an identified surrender of her five children, including John, Eric and Jane. Dr. Loving testified about the "strong attachments that the kids have developed with their caregivers and they are mostly positive." By mostly positive, he meant that the children's history to that point, "made their attachment experiences complicated." They had all "had losses, separations, unpredictability. . . . And so they are kids who [were] at risk for longer term relationship problems, social

 A-4943-18T1

problems." Ibid. Dr. Loving noted in his report that Eric and Jane were placed with their resource family when they were infants and "relate as if this is their family." The longer the children did not have permanency, "the higher their risk will be for long-term emotional difficulties." All the resource parents were willing to adopt.

Dr. Loving concluded that Theresa would not be able to "provide a safe, stable, healthy home to the children in the foreseeable future[,]" and that delay would increase the harm to the children. He testified that "terminating parental rights and allowing these kids to be adopted by their current caregivers would not cause more harm than good."

The adoption case worker testified that although the children were in placement for two years, defendant did not obtain appropriate housing for them. He did not reschedule his psychological evaluation despite being contacted by the previous caseworker. Defendant never had a plan for caring for the children nor did he offer the names of other relatives to be assessed. Additionally he had not called about the children or maintained contact with the Division.

In her oral decision, Judge Mary K. White found the witnesses to be credible. The court found defendant (and the other fathers in this case) "ignored

their parental obligations" and "[were] not providing any planning, any nurturance, any affection that's meaningful."

The court found defendant had the ability to offer an alternative because he did not have "cognitive difficulties" or "known mental health difficulties." Despite this, he did not communicate with the Division and visited the children sporadically. The court found the Division's services were reasonable. The court concluded that defendant "did not want to provide the care directly for [his] . . . children" and instead was counting on Theresa "to be restored to health so she could [care for the children] . . . in [his] . . . absence, as had been the situation that [he'd] always envisioned." The court concluded that termination of defendant's parental rights would not do more harm than good. The children were "thriving" in their current placements. The children's resource families would be able to mitigate any harm from termination but defendant was "in no position to mitigate . . . the harm to these children."

On appeal, defendant argues:

> I. THE TRIAL COURT INCORRECTLY CONCLUDED THAT THE DIVISION HAD ESTABLISHED, BY CLEAR AND CONVINCING EVIDENCE, ALL FOUR PRONGS OF THE BEST INTERESTS STANDARD, WHICH IS THE MINIMUM LEGAL THRESHOLD REQUIRED FOR ANY CONSTITUTIONALLY VALID

7

TERMINATION OF THE PARENTAL RELATIONSHIP[.]

A. THE TRIAL COURT'S FACTUAL FINDINGS SUPPORTING ITS CONCLUSIONS UNDER PRONG ONE AND PRONG TWO OF THE BEST INTEREST STANDARD ARE NOT SUPPORTED BY THE RECORD, SHOULD NOT BE AFFORDED DEFERENCE BY THIS COURT, AND DO NOT SUPPORT TERMINATION OF THE FATHER'S PARENTAL RIGHTS[.]

B. THE DIVISION'S FOCUS OF ITS EFFORTS IN PROVIDING SERVICES NEARLY EXCLUSIVELY TO THE MOTHER AND THE TRIAL COURT'S APPROVAL OF THAT APPROACH UNDER PRONG THREE OF THE BEST INTEREST STANDARD WERE CLEARLY ERRONEOUS[.]

C. THE TRIAL COURT ERRED IN FINDING THAT TERMINATING THE FATHER'S PARENTAL RIGHTS TO JOHN, ERIC, AND JANE, FREEING THEM TO BE ADOPTED BY DIFFERENT RESOURCE PLACEMENTS, WOULD NOT DO MORE HARM THAN GOOD UNDER THE FOURTH PRONG OF THE BEST INTEREST STANDARD[.]

II.

To terminate parental rights, N.J.S.A. 30:4C-15.1(a) requires that the

Division prove by clear and convincing evidence the following four prongs:

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm . . . . ;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

A trial court's decision to terminate parental rights is subject to limited appellate review. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007); see Cesare v. Cesare, 154 N.J. 394, 413 (1998) ("Because of the family courts' special . . . expertise in family matters, appellate courts should accord deference to family court factfinding."). The family court's decision to terminate parental rights will not be disturbed "when there is substantial credible evidence in the record to support the court's findings." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008).

We have carefully examined the record in light of the arguments posed, concluding the trial court's findings were supported by substantial credible evidence on the record as a whole. We defer to those findings. See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012); Cesare, 154 N.J.

9

at 413. We affirm substantially for the reasons set forth by Judge White in her oral decision, adding these comments.

The harm necessary to prove prong one is not limited to physical harm; it includes a parent's inability to provide a safe, stable and permanent home for the child. See In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999). Prong two is satisfied where a parent "is unable or unwilling to overcome or remove the harm," that led to the Division's involvement. In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999). The evidence supported the court's findings under prongs one and two because defendant did not consistently visit with the children, did not obtain suitable housing for the children nor did he make any plan for taking care of them in the future. He was simply waiting for the children to be returned to Theresa.

Defendant contends he was denied "meaningful due process" because he was not served and a year elapsed before he could "be heard by any trial judge." However, the evidence was he did not respond to multiple calls from the Division and was aware the children were in placement. After he was served, he did not stay in contact with the Division, obtain suitable housing or develop a plan for how he would care for his children. He delayed months in filling out the application for an attorney and this delayed the proceedings. Defendant was

granted supervised visitation. He has not explained how he was prejudiced by the delay in service. See N.J. Div. of Child Prot. & Permanency v. A.S.K., 236 N.J. 429, 430 (2019) (where the Court "perceive[d] no prejudice" to the defendant in the delay of service).

Defendant argues the trial court erred by finding the third prong was satisfied because the Division should have assisted him in obtaining housing and instead focused its efforts on Theresa. The statute's third prong requires that the State make reasonable efforts to help a parent correct the circumstances that led to the child's outside placement by providing services. N.J.S.A. 30:4C-15.1(a)(3). Reasonable efforts must consider "the abilities and mental conditions of the parents." N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 442 (App. Div. 2001).

The evidence was consistent with the trial court's conclusion that defendant never had a plan to care for the children; he wanted Theresa to care for them. He did not identify housing for himself and the children. He was provided appropriate services according to his evaluations. He did not advise what other services he needed.

A-4943-18T1

Defendant argues the trial court should not have found the fourth prong under the statutory test because he did not have a bonding evaluation. He also argues that separating the siblings will harm the children.

Prong four does not require that "no harm will befall the child as a result of the severing of biological ties." K.H.O., 161 N.J. at 355. A court must consider "the child's age, her overall health and development, and the realistic likelihood that the [natural] parent will be capable of caring for the child in the near future." Id. at 357.

Although defendant did not have a bonding evaluation, there were evaluations of the children, Theresa and the resource families. It was not rebutted that the children were bonded with the resource families and visiting with their siblings. Defendant visited irregularly and then stopped in March 2019. When the case was tried in June 2019, the children had been living in resource homes since they were infants, and in Jane's case since she was a newborn; they were thriving. The testimony was not rebutted that the resource parents would be able to mitigate the potential harm from termination, but that defendant, who did not allege he had close relationships with the children, could not. There was ample evidence here to support the trial court's finding that termination of parental rights would not do more harm than good.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13